RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0241p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FERDINAND LITI et al.,

*Petitioners,*

*v.*

No. 03-3570

ALBERTO GONZALES, Attorney General,

*Respondent.*

> On Petition for Review of an Order
> of the Board of Immigration Appeals.
> Nos. A73 396 749; A73 396 750; A73 396 751.

Argued: November 2, 2004

Decided and Filed: June 3, 2005

Before: MOORE and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioners. Elizabeth J. Stevens, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioners. Elizabeth J. Stevens, Linda S. Wendtland, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

MOORE, J., delivered the opinion of the court, in which EDMUNDS, D. J., joined. GIBBONS, J. (p. 9), delivered a separate concurring opinion.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Petitioners, Ferdinand Liti ("Liti"), his wife Marieta Liti, and their daughter Sabina Liti, seek review of a final order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's decision to deny their request for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the Convention Against Torture ("CAT"). The BIA found that the Litis were incredible and that their fear of future persecution was contradicted by the background evidence in the record. Moreover,

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

the BIA concluded that the absence of reasonably available corroborating evidence militated against their claims. In their petition, the Litis argue that the BIA decision was not supported by the evidence, and in the alternative, that they are entitled to asylum based on humanitarian grounds. Though it erred in its credibility determination, we conclude that the BIA's decision denying the Litis' claims was supported by substantial evidence. Furthermore, we hold that the Litis failed to exhaust their administrative remedies with regard to their claim for asylum on humanitarian grounds. Therefore their petition for review is **DENIED** in part and **DISMISSED** in part, but we **STAY** our order for 120 days to allow the BIA the opportunity to address a new provision in the law.

## I. BACKGROUND

Liti and his wife, both of whom are thirty-seven years old, are natives and citizens of Albania; their daughter, Sabina, is a fourteen-year-old native of Germany but a citizen of Albania. At their removal hearing, the Litis testified that beginning in 1984 they became involved in anti-communist activities in Albania, for which they were repeatedly arrested and jailed. Liti explained that he participated in public demonstrations and distributed anti-communist pamphlets. At one such demonstration, he claimed that he participated with protestors in tearing down a statute of Stalin, located in the center of Tirana, the capital of the country. He also testified that he was detained in 1988 for three or four days, during which his feet were repeatedly hit with a plastic stick and he was placed in an unheated room during winter. Liti explained that "because they knew that we didn't like the [sic] communism . . . the communists would come and pick me up and they would torture me . . . not because [of what] I did but because they . . . were suspicious of me." Joint Appendix ("J.A.") at 179 (Removal Hr'g Tr. at 138). Mrs. Liti testified at the removal hearing that she spent a year in prison in Albania for insulting a communist official. The Litis also claimed that their family members were persecuted as well. Specifically, the Litis claimed that Liti's father and Mrs. Liti's grandfather were executed by the communists and that Liti's brother spent eight years in prison for attempting to leave the country.

On July 2, 1990, fearing a police crackdown of anti-communist activities, Liti, along with his wife and five others, crashed a truck through the front gate of the German embassy in Tirana. Because the Germans did not hand the protesters over to the Albanian authorities, other anti-communist activists sought refuge within the embassy grounds. Mrs. Liti testified that up to 3,200 people entered the compound. For fourteen days, the protestors remained within the German embassy grounds, while the Albanian government attempted to force them out by shutting off the water and electricity. Mrs. Liti claimed that the Albanian government even sent in a truck with contaminated water to harm the protestors. Eventually the United Nations arranged passage for the 3,200 protestors to Germany, where they were granted political asylum.

In 1991, the communist regime in Albania fell and was replaced by a parliamentary republic. Accordingly, in 1995, the German government revoked the asylum status of all the Albanian protesters, including the Litis. In April 1995, Liti and his wife, along with their two daughters who were born in Germany, entered the United States as non-immigrant visitors and filed an application for asylum.[1] The Immigration and Naturalization Service ("INS") referred the asylum application to the immigration court and issued a Notice to Appear charging the Litis with violation of § 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). At their removal hearing, the Litis conceded their unlawful status, but requested asylum, withholding of removal, and relief under CAT. In support of their request, the Litis asserted that if they were to return to Albania, they would be persecuted for their leadership role in the toppling of the communist regime. Liti testified that he and his wife were the first ones "that . . . stood up against the communism [sic], they will never ever forget that, and if I go back to Albania now, they are going to kill me, I am going to be the first one,

---

[1]The Litis' second child, Hilga, is not involved in the removal proceedings.

they would kill me." J.A. at 185 (Removal Hr'g Tr. at 144). Liti fears returning even after the collapse of the communist regime, because he believes the currently elected Socialist party is comprised of the same people who were in power during the communist regime or their descendants. He stated that "[t]he communism regime never collapsed, they pretended that the communist [sic] collapsed but . . . [it] will never collapse." J.A. at 193 (Removal Hr'g Tr. at 152). Mrs. Liti echoed this fear, stating that "we are very well known and prominent people, we are the first one, we are the first one that destroyed everything . . . the same people are there, their children are in power and they could never, ever forget what happened." J.A. at 209 (Removal Hr'g Tr. at 168). To corroborate their claims, Liti stated that a former anti-communist demonstrator, who participated in the embassy break-in and was granted asylum in Germany, was murdered by the communists upon his return to Albania.

At the conclusion of the hearing, the immigration judge ("IJ") denied the Litis' requests for asylum, withholding of removal, and relief under CAT. The IJ found the Litis to be incredible based on several inconsistencies between their testimony and the asylum application they submitted. Specifically, the application did not mention either the Litis' participation in the toppling of the statute of Stalin or their leadership role in crashing the German embassy gate. Therefore, the IJ characterized the Litis' testimony as embellishment rather than fact. The IJ also noted that the Litis failed to present any additional evidence to corroborate their claims of a fear of future persecution. Given the fact that Liti's brother, with whom he claims he is in frequent contact, is a journalist in Greece covering the injustices in Albania, the IJ concluded that documentation in the form of newspaper articles or affidavits was reasonably available to them. Most importantly, the Litis failed to provide any evidence to prove their claim that a fellow anti-communist demonstrator, whose asylum in Germany had been revoked, had been murdered upon his return to Albania. Furthermore, even if the Litis were credible, the IJ held that they would not be entitled to relief in light of the changed conditions in Albania. Finally, the IJ found that evidence of past persecution was not so severe as to warrant a discretionary grant of asylum on humanitarian grounds. The Litis filed a timely notice of appeal to the BIA.

On March 24, 2003, the BIA affirmed the IJ's decision, finding that "on the total record of oral testimony and documentary evidence as to country conditions in Albania, the [Litis] do not meet the definition of a refugee as set forth in . . . [the INA]." J.A. at 6 (BIA Decision at 2). Specifically, the BIA agreed with the IJ's adverse credibility determination based on the discrepancies between the Litis' hearing testimony and their asylum application. Furthermore, the BIA held the background evidence in the record contradicted the Litis' claim of a well-founded fear of future persecution and also concluded that the absence of reasonably available corroborating evidence militated against their claims. The Litis now petition this court for review.

## II. ANALYSIS

### A. Asylum Claim

The Litis argue in their petition that the BIA erred in denying their request for asylum. Under the INA, the Attorney General may grant asylum to an alien who qualifies as a "refugee," which is defined as one "who is unable or unwilling to return to . . . [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). We review "administrative findings of fact concerning whether [an] alien qualifies as a refugee under a substantial evidence test." *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). Under that standard, findings of fact are treated as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). "[T]he petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution

or fear of persecution." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). Upon review in this case, we conclude that the record does not compel a contrary result.

Under the INA, an applicant for asylum bears the burden of demonstrating that "persecution is a reasonable possibility should he be returned to his country of origin." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (internal quotation omitted). The applicant need not demonstrate that he will probably be persecuted if returned because "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). In this case, the BIA found that the Litis failed to satisfy this burden because their testimony was incredible, they presented no corroborating evidence though it was reasonably available, and the Government demonstrated a fundamental change in circumstances in Albania to dispel any fears of future persecution upon their return. The Litis challenge those findings.

### 1. Adverse Credibility Determination

The first issue which the Litis raise in their petition is that the BIA erred in affirming the IJ's adverse credibility determination. We have stated that though "an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. An adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (internal quotation and citations omitted). Moreover, "[s]peculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." *Shire v. Ashcroft*, 388 F.3d 1288, 1296 (9th Cir. 2004) (internal quotation omitted). Where the credibility determination is based on inconsistencies unsupported in the record, we have reversed the determination. *Sylla*, 388 F.3d at 930; *see also Ileana v. INS*, No. 02-3972, 2004 WL 1770569, at *2 (6th Cir. Aug. 5, 2004) ("The Court will not accept blindly an IJ's conclusion that a petitioner is not credible."). In this case, the record does not support the BIA's credibility finding, and therefore, we are compelled to a contrary result.

In its decision, the BIA deferred to the IJ's adverse credibility determination because "there were important conflicts between the testimony of the lead respondent and the written asylum application on central events of the asylum claim, and no reasonable explanation for those discrepancies was provided." J.A. at 6 (BIA Decision at 2). The discrepancies were explained by the IJ as the omission of certain events from Liti's asylum application. Specifically, the IJ found that Liti failed to mention in the application his "participat[ion] in the toppling of Stalin's monument during a major anticommunist protest in Albania" and his "leadership role in crashing the gates of the German Embassy with his own vehicle." J.A. at 18 (IJ Decision & Order at 8). Like affirmative inconsistencies, omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim. *Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003); *Aguilera-Cota v. INS*, 914 F.2d 1375, 1382 (9th Cir. 1990). In this case, however, neither of the omissions cited by the IJ are substantial enough to justify an adverse credibility determination.

Specifically, the IJ did not find anything in the application which contradicted the Litis' later testimony at the removal hearing. In the application, Liti wrote that his family was involved in the democratic anti-communist movement, that they attended secret meetings, and that they demonstrated against the communists to bring democracy to the country. In his supplemental application, he wrote that he was an anti-communist activist and escaped from Albania to Germany and was granted asylum there. Liti attached to the asylum application the letter from the German government, which stated that the Litis sought protection in the German embassy in Tirana in 1990 and were granted asylum. While the IJ is correct that the application itself did not provide specific details of the two events about which the Litis testified, the application does not contain *any* specific

incidents, but rather consists of generalized statements of the Litis' anti-communist activities in Albania.[2] Under the IJ's reasoning, any incident to which the Litis testified at the removal hearing could be used to justify an inconsistency supporting an adverse credibility determination. The absence of specific incidents in the application, however, does not give rise to the inference that the Litis are incredible, but rather reinforces their claim of a long history of political protest which cannot be limited to a few specific instances. The Litis' asylum claim is based on a series of events over six years, which demonstrate their political activity as well as the resulting persecution by the Albanian government. When measured against their six years of protest, the omission of one specific incident, such as the tearing down of Stalin's statue, is insubstantial and does not go to the heart of their broader asylum claim. *See Secaida-Rosales*, 331 F.3d at 309.

Furthermore, we reject the BIA's underlying rationale that the Litis are required to provide an exhaustive, detailed list of their anti-communist activities in their asylum application. As the Second Circuit stated, "the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding, and . . . holding applicants to such a standard is not only unrealistic but also unfair." *Id.* at 308. The court noted that:

> the form utilized by the INS for applications for asylum and withholding provides half a page for the applicant to explain why he or she is seeking asylum, and no more than two inches to recount mistreatment or threats against the applicant or the applicant's family by the government or other groups. Although the application invites the applicant to attach additional pages, we think the small space on the form itself would hardly indicate to an applicant that the failure to include every detail regarding the basis for asylum could later lead to an adverse credibility finding when the applicant elaborates on them in the course of a deportation hearing.

*Id.*; *see also Ileana*, 2004 WL 1770569, at \*3 (holding that several omissions of specific incidents in an asylum application do not support an adverse credibility determination); *Pop v. INS*, 270 F.3d 527, 531-32 (7th Cir. 2001) ("We hesitate to find that one seeking asylum must state in his or her application every incident of persecution lest the applicant have his or her credibility questioned if the incident is later elicited in direct testimony."); *Aguilera-Cota*, 914 F.2d at 1382 (holding that the omission of two collateral incidents is insufficient to support an adverse credibility determination where "there were *no* contradictions between the information set forth in the application and his testimony"). The purpose of holding a removal hearing is not simply to reiterate the statements made in the asylum application, but rather to allow an alien "to present evidence on the alien's own behalf" including to elaborate on the generalized claims made in the application itself. 8 U.S.C. § 1229a(b)(4)(B). Therefore, because the statements in the application were not inconsistent with the Litis' subsequent testimony of the specific events at their removal hearing, we conclude the BIA's adverse credibility finding is unsupported by the evidence, and therefore we are compelled to conclude to the contrary.

---

[2] It appears from the asylum application that the Litis intended to provide details on specific incidents of their political activity. Liti stated in his application that his family participated in anti-communist activities and "some of these incidents are enumerated in the statement attached." J.A. at 365 (Asylum Application at 5). The Litis claim in their appellate brief that their prior attorney forgot to attach the additional statement. Even without the statement detailing specific incidents, there is nothing in the application which is inconsistent with the Litis' subsequent testimony and can thereby support an adverse credibility determination.

### 2. Changed Country Conditions and the Absence of Corroboration

The second issue raised in the petition is that the BIA erred by concluding that even if the Litis were credible, they were not entitled to relief in light of the fundamentally changed conditions in Albania and the absence of reasonably available corroborating evidence. Upon review of the record, we hold that the BIA's decision is supported by substantial evidence.

Because the Litis were granted asylum in Germany in 1990, the Government stipulated to the fact that the Litis suffered past persecution based on a statutorily protected ground, which entitles them to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). Where an Albanian asylum applicant has demonstrated past persecution based on the applicant's anti-communist activities, the collapse of the communist regime may be a sufficient change in country conditions to rebut that presumption. *See, e.g., Delaj v. INS*, No. 02-3797, 2004 WL 1791474, at *2 (6th Cir. Aug. 6, 2004); *Tanazi v. Ashcroft*, No. 02-4200, 2004 WL 1770617, at *4 (6th Cir. Aug. 5, 2004); *Potka v. Ashcroft*, No. 02-3654, 2003 WL 21054683, at *2 (6th Cir. May 6, 2003). Thus, to establish their asylum claim, the Litis must demonstrate a well-founded fear of future persecution notwithstanding the political change which has occurred in Albania since they left in 1990.

In support of their claim, the Litis introduced several newspaper articles and reports detailing the conditions in Albania. Though the documents submitted by the Litis detail a number of instances of violence, corruption, and protest within the country, nothing specifically supports their claim that were they to return, they would be persecuted for their anti-communist opinions. Instead, the Litis' evidence "describe[s] the type of general civil disorder and lawlessness to which anyone living in Albania would be exposed." *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004). The country reports submitted by the Government reinforce that conclusion. The State Department's 1999 country report states that "[t]here were no confirmed cases of political killings by the Government, despite repeated claims by the main opposition party that its members were harassed, beaten, and sometimes murdered by government agents." J.A. at 252 (1999 Country Reports on Human Rights Practices at 2). The report also notes that "[t]here were no confirmed reports of politically motivated disappearances" nor any "clear cases of detainees being held for strictly political reasons." J.A. at 253, 255 (1999 Country Reports on Human Rights Practices at 3, 5). In a 1998 report, the State Department explains that "[a]pplicants [for asylum] frequently and incorrectly seek to portray the socialist government as 'Communist' and actively targeting supporters of the opposition." J.A. at 268 (Albania - Profile of Asylum Claims & Country Conditions Addendum). The report notes, however, that "Democratic Party members were indeed the victims of numerous attacks and murders, but in Albania's general atmosphere of lawlessness and lax law enforcement, neither culprits nor motives were ever found or confirmed for most of these crimes." J.A. at 268 (Albania - Profile of Asylum Claims & Country Conditions Addendum).

The most compelling evidence the Litis presented in support of a well-founded fear of future political persecution was their own testimony that a fellow anti-communist protester, who participated in the embassy break-in and was granted asylum in Germany, was murdered by the communists upon his return to Albania. The IJ discounted the testimony, however, because the Litis failed to present any evidence corroborating either the murder or the motive behind it. In their brief, the Litis argue that written corroboration is not required since "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a). While recognizing that corroboration is not required, we have also stated that even if the applicant is credible, "[t]he absence of [reasonably available] corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (internal quotation omitted). In this case, the IJ found that corroborating evidence was reasonably available to the Litis, yet not provided. Specifically, though they have family members still living in Albania, the Litis failed to provide any affidavits in support of their

claim of persecution of anti-communists by members of the current government.  Moreover, though Liti is in frequent contact with his brother, who lives in Greece and works as a journalist documenting the injustices in Albania, the Litis failed to provide an affidavit or a newspaper article written by the brother to bolster their claims of a well-founded fear of political persecution.  Furthermore, at the removal hearing, the Litis did not provide any reasonable explanation for the absence of any corroborating evidence.  Without such evidence, we agree with the BIA that in light of the fundamentally changed conditions in Albania, the Litis failed to satisfy their burden of demonstrating a well-founded fear of future persecution if they were to return.  Therefore, we conclude that the BIA's decision denying the Litis' asylum claim was supported by substantial evidence.

## B.  Withholding of Removal and Relief under CAT

In addition to their asylum claim, the Litis also petition for review of the BIA's denial of their request for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). Withholding of removal is required if the alien can demonstrate that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). "An applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).  In order to qualify for withholding of removal, the Litis "must establish that there is a clear probability that [they] will be subject to persecution if forced to return to [Albania]." *Id.*  To establish a clear probability, the applicant must demonstrate that "it is more likely than not" that he or she will be persecuted upon return.  8 C.F.R. § 1208.16(b)(2).  Because the Litis have failed to establish their eligibility for asylum, "it therefore follows that [they] cannot satisfy the more stringent standard for withholding of [removal]" as well. *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001).

Similarly, the Litis petition for review of the BIA's denial of relief under CAT.  "Protection under the Convention exists in the form of withholding of removal to the country of torture." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001).  To obtain relief under CAT, the applicant bears the burden of establishing "it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  Once again, because the Litis failed to establish eligibility for asylum, they also cannot meet the heightened requirements for relief under CAT. *Pilica*, 388 F.3d at 955; *Yu*, 364 F.3d at 703 n.3.

Therefore, we conclude that the BIA's decision denying the Litis' claims for withholding of removal and relief under CAT was supported by substantial evidence.

## C.  Asylum on Humanitarian Grounds

The Litis also petition for review of the IJ's denial of their request for asylum on humanitarian grounds pursuant to 8 C.F.R. § 1208.13(b)(1)(iii)(A).  In the absence of a well-founded fear of future persecution, an alien may still be entitled to a discretionary grant of asylum if he or she "has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution."  8 C.F.R. § 1208.13(b)(1)(iii)(A).  In this case, the IJ denied the Litis' claim under this provision, finding that there was no evidence that the "past persecution [was] so severe as to compel" asylum on humanitarian grounds.  J.A. at 20 (IJ Decision & Order at 10).  Because the Litis failed to raise this issue before the BIA below, we are without jurisdiction to consider their petition for review on this ground.  8 U.S.C. § 1252(d)(1); *Perkovic*, 33 F.3d at 619; *see also Ramani*, 378 F.3d at 560 (holding "that only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal"). Thus, the Litis' claim under § 1208.13(b)(1)(iii)(A) is dismissed.

In their brief before this court, the Litis also assert a claim for asylum under 8 C.F.R. § 1208.13(b)(1)(iii)(B), which allows for a discretionary grant of asylum to an alien who can establish "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(B). Other serious harm is "'harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution.'" *Krastev v. INS*, 292 F.3d 1268, 1271 (10th Cir. 2002) (quoting 65 Fed. Reg. 76121, 76127 (Dec. 6, 2000)). This new section became effective on January 5, 2001, after the Litis had appealed the IJ's order, but before the BIA issued its decision. Because it was not in existence at the time, the Litis failed to seek relief under this new regulation before the BIA, and thus we lack jurisdiction to consider the merits of this claim. 8 U.S.C. § 1252(d)(1); *Ramani*, 378 F.3d at 560.

We note, however, that this "new provision provides a second avenue of relief for victims of past persecution whose fear of future persecution on account of a protected ground has been rebutted by evidence of changed country conditions or of safe harbors within his or her home country." *Belishta v. Ashcroft*, 378 F.3d 1078, 1081 (9th Cir. 2004). In adopting the rule, the Justice Department stated that it "believes it is appropriate to broaden the standards for the exercise of discretion in such cases." 63 Fed. Reg. 31945, 31947 (June 11, 1998). The Justice Department noted that "there may be cases where it is appropriate to offer protection to applicants who have suffered persecution in the past and who are at risk of future harm that is not related to a protected ground." *Id.* Though the Litis may be entitled to asylum under this new provision, it is the BIA, rather than this court, which is the proper forum to address their claim. We have stated that the purpose of the exhaustion requirement in § 1252(d)(1) is:

> (1) to ensure that the [DHS], as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims; (2) to avoid premature interference with the agency's processes; and (3) to allow the BIA to compile a record which is adequate for judicial review.

*Ramani*, 378 F.3d at 559 (internal quotations and citations omitted). All of these interests are furthered by allowing the BIA the opportunity to interpret this new provision. Accordingly, we dismiss the Litis' claim brought under § 1208.13(b)(1)(iii)(B) without expressing an opinion as to whether they qualify for relief, but stay our order to allow the BIA the opportunity to reopen the case and consider the Litis' new claim.[3] *See Belishta*, 378 F.3d at 1081.

### III. CONCLUSION

In sum, though we conclude the BIA erred in its adverse credibility determination, the Litis' petition for review is **DENIED** in part and **DISMISSED** in part. Our order is **STAYED** for 120 days to allow the BIA the opportunity to reopen the case to consider the Litis' new claim under § 1208.13(b)(1)(iii)(B).

---

[3]Though petitioners are time barred from filing a motion to reopen proceedings, the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a).

---

**CONCURRENCE**

---

JULIA SMITH GIBBONS, Circuit Judge, concurring.  While I agree with the majority's conclusion that the Litis' petition for review should be denied in part and dismissed in part and its reasoning except in Part II.A.1, I write separately to note my disagreement with that part of the majority's opinion (Part II.A.1) finding that the BIA erred in deferring to the IJ's determination that lead petitioner Ferdinand Liti was not credible.

This court reviews credibility determinations under the substantial evidence standard. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). "This is a deferential standard: A reviewing court should not reverse simply because it is convinced that it would have decided the case differently." *Id.* at 925-26 (internal quotation marks and citation omitted).  In making the adverse credibility determination, the IJ in this case pointed to the inconsistencies between Liti's testimony at the removal hearing and the Litis' application for asylum:

> For example, in his I-589 applications, there was no mention of his having participated in the toppling of [Stalin's] monument during a major anticommunist protest in Albania, nor was there any mention of respondent's leadership role in crashing the gates of the German Embassy with his own vehicle, and with respect to these omissions there were no plausible explanations by respondents for [the] absence of two major events supporting his claim for relief.  Based on these omissions, the Court finds respondent's credibility questionable and believes his testimonial claims of being singly responsible for the collapse of communist rule in Albania, [which he] made during one point in the hearing, to be the result of embellishment rather than any fact.

These were not "irrelevant inconsistenc[ies]," *cf. id.* at 926 (citation omitted); rather, they were significant omissions that could reasonably create skepticism about whether Liti was telling the truth.  Surely, the IJ was justified in finding Liti's claim to be singly responsible for the fall of Albanian communism to be "embellishment."  The majority points out that the Litis evidently intended to enumerate specific incidents of their political activity (presumably, including the monument-toppling and embassy-crashing incidents) as part of their 1997 application for asylum, but, according to the Litis, their attorney neglected to attach a statement including such details.  Even if the Litis' attorney did neglect to attach the statement or statements, however, the Litis could have introduced such statements at the removal hearing as prior consistent statements.  The failure to do so suggests that they would not have been helpful in corroborating Liti's testimony.  Moreover, the Litis' 1995 application for asylum contains a detailed narrative that fails to include major events such as the ones discussed by Liti at the hearing.

In sum, these omissions are striking and provide an adequate basis for an adverse credibility determination.