NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0119n.06
Filed: February 14, 2006

No. 04-4486

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| QENDRIME JAUPI; MAKSIM JAUPI; DENIS JAUPI, | ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| ALBERTO GONZALES, Attorney General, | ) ) | |
| Respondent. | ) | |

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. Qendrime, Maksim, and Denis Jaupi, citizens of Albania, petition this court for review of the Board of Immigration Appeals's final order of removal. The BIA found that changes in Albanian country conditions precluded the Jaupis' fear of future persecution. Because the BIA's finding is not supported by substantial evidence, we grant the petition for review, vacate the BIA's judgment, and remand to the BIA for further consideration.

I

The Jaupis conceded removability before an Immigration Judge but requested asylum and withholding of removal. At the removal hearing, Qendrime Jaupi, as the lead petitioner, testified to a number of hardships that she and her family endured while in Albania. She discussed being

beaten and threatened by the police in 1992 after she and other Democratic Party members removed a statue of a former dictator. She recounted a rocket being shot into her home in 1997 following the Democratic Party's defeat in the national elections. She averred that, in 2001, the police arrested and beat her for protesting the denial of her right to vote. Finally, she alleged that in 2001, her son was kidnaped, held for four days, injured, and returned with a warning for his parents to stop their political activities. After her son returned, Jaupi and her family fled to the United States.

The IJ "generally credit[ed]" Jaupi's testimony, but noted that some of her testimony was contradicted by Department of State ("DOS") documents, and concluded that her fear of future political persecution, although subjectively real, was not objectively reasonable. He determined that many of Jaupi's hardships, rather than being the product of political persecution, were "more likely ascribed to criminal elements which the State Department describes as rampant in Albania."

On appeal, the BIA acknowledged that "respondent's harm included having her home shot at with a rocket, her son kidnaped, and being beaten by the police." Assuming that this harm amounted to persecution, the BIA found that the government established by a preponderance of the evidence "a fundamental change in [Albania's] circumstances," so that Jaupi had no objective basis for a fear of future harm. The BIA quoted from the DOS 2001 Profile of Asylum Claims and Country Conditions: "There is virtually no evidence that individuals are targeted for mistreatment on political grounds. Far more prevalent is organized and amateur crime . . . ." The BIA concluded

that, "[g]iven these country conditions," Jaupi "ha[d] not met her burden of proving that she ha[d] a well-founded fear of persecution." Jaupi asks this court to review the BIA's decision.

II

We uphold the BIA's asylum decision where it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We regard the BIA's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Liti v. Gonzales*, 411 F.3d 631, 636 (6th Cir. 2005) (quotation omitted); 8 U.S.C. § 1252(b)(4)(B).

The BIA assumed that Jaupi established past political persecution. This entitled her to a presumption of a well-founded fear of future persecution, and the burden shifted to the government to demonstrate, "by a preponderance of the evidence," "a fundamental change in circumstances such that [Jaupi] no longer ha[d] a well-founded fear of persecution." 8 C.F.R. § 1208.13(b); *see also Liti*, 411 F.3d at 639.

Here, the BIA relied on two DOS documents in concluding that the government demonstrated a fundamental change in circumstances. First, the BIA pointed out that, according to the 2001 Profile, "[t]here is virtually no evidence that individuals are targeted for mistreatment on political grounds." The BIA then cited the 2001 DOS Albanian Country Report in support of its

conclusion that "political parties have been free to operate, and . . . the generalized lawlessness and violence present in the country is not politically motivated."

These documents, however, fail to support the proposition that Albania experienced a fundamental change since the time of Jaupi's claimed persecution. Two of the events that the BIA identified as possible persecution—the voting problems (June 2001) and Denis's kidnaping (July 2001)—took place *after* the DOS released the Profile in May 2001. Assuming, as did the BIA, that Jaupi credibly proved past persecution, the Profile provides unpersuasive evidence of a relevant change in circumstances.

The 2001 Country Report is similarly unpersuasive. Although the Report describes the general lawlessness rampant in Albania, it also describes "voting irregularities" such as police interference and "credibl[e] report[s]" from the Democratic Party of police harassment. The Report, released in March 2002 and describing events from 2001, nowhere indicates that circumstances have meaningfully changed since the time of Jaupi's last alleged persecution in 2001. *See Krastev v. INS*, 292 F.3d 1268, 1276 (10th Cir. 2002) ("There is nothing in the [1995] Country Report to indicate that at the time it was published the government was more willing to control the local groups than it was when petitioners left Bulgarian [sic] in 1994. . . . [I]t provides no information that conditions changed between 1994 when petitioners were, according to the BIA's assumption, still subject to persecution, and the issuance of the report."); *see also Mece v. Gonzales*, 415 F.3d 562, 574 n.5 (6th Cir. 2005) (discussing the DOS Profile at issue here and concluding that, "[i]n any event, speculation

and broad political generalizations by the State Department cannot trump concrete, detailed, and adequately corroborated evidence of specific instances of persecution").

Neither the BIA nor the respondent points to other evidence to support the BIA's conclusion that the government rebutted the presumption of a well-founded fear by demonstrating a fundamental change in circumstances. In the absence of such evidence, we vacate the BIA's order. Because we have no credibility finding or past-persecution determination to review, we remand the case to the BIA. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("A court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (quotations and citations omitted)). On remand, the BIA should determine whether the Jaupis credibly demonstrated past persecution and should address the Jaupis' requests for asylum and withholding of removal in light of its findings.

## III

Because the BIA's decision in this case is not supported by substantial evidence, we grant the petition for review, vacate the BIA's order, and remand for further consideration.