NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0095n.06

Case No. 18-3659

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 27, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARTINA BOX-HERNANDEZ, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE: SUTTON, WHITE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. Petitioner Martina Box-Hernandez, a native and citizen of Guatemala, along with her minor child who is a derivative of Box-Hernandez's asylum claim, seeks review of the Board of Immigration Appeals ("BIA") decision upholding the immigration judge's denial of Box-Hernandez's application for asylum pursuant to section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158. For the reasons stated below, we **DENY** Box-Hernandez's petition for asylum and **DISMISS** Box-Hernandez's petitions for withholding of removal and CAT protections.

## I. BACKGROUND

### A. Petitioner's Requests for Relief

Box-Hernandez entered the United States in July 2015, without being admitted or paroled after inspection by an immigration officer. On July 27, 2015, the Department of Homeland Security ("DHS") initiated removal proceedings against Box-Hernandez, charging her with removability as an alien present in the United States in violation of INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). At a hearing held before an immigration judge on December 1, 2015, Box-Hernandez admitted the factual allegations in her Notice to Appear and conceded removability as charged. On March 22, 2016, Box-Hernandez filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") for herself and her minor daughter. An individual hearing was held on May 11, 2016, and on August 1, 2017 the applications were denied.

### B. Hearing on the Merits

At the hearing on the merits, Box-Hernandez testified to the events and circumstances in Guatemala that she alleges proved a well-founded fear of prosecution, making her eligible for asylum in the United States. The immigration judge determined that Box-Hernandez was generally credible. The testimony she gave at the hearing is set forth below.

Box-Hernandez was born in Aldea Chex, Aguacatan, Huehuetenango, Guatemala; she is ethnic Quiche Mayan. Box-Hernandez is married to Lazaro Sica Alvares, and they have eight children together. Box-Hernandez lived in Aldea Chex until coming to the United States. She has no formal schooling and cannot read or write in any language. In Aldea Chex, Box-Hernandez worked on her husband's land, which he inherited from his father. Her husband left the family when their youngest daughter was about one year old, sometime around 2009.

Prior to leaving the family, Box-Hernandez's husband was a habitual drunkard who would come home inebriated and beat Box-Hernandez and scare the children. Box-Hernandez's husband was never very helpful—he did not work or help raise the children. Box-Hernandez describes her relationship with her husband as physically and emotionally abusive. Box-Hernandez does not know where her husband went when he left, only that he said he might go to the United States. She has not heard from him since he left.

After her husband left, his family became upset with Box-Hernandez. When they saw her on the street, they would spit on her; they would come to her house with rocks and threaten to kill her and tell her to leave their family home; sometimes, when her husband's family went to Box-Hernandez's house, they hit her and destroyed her crops; other times, they would say rude things to her. Box-Hernandez was physically assaulted by her husband's family six or eight times. One time, her husband's family went to Box-Hernandez's home and told her they were taking the land and were going to take care of the children, to which Box-Hernandez objected. The family members beat her with a rope and hit her on her back, leaving her with purple welts.

In addition to problems with her husband's family, one time people came and knocked on Box-Hernandez's door at night and she heard gun shots in the area. Another time, when she was away, someone broke into her house, destroyed her belongings, and stole money, a television, and one of her children's bikes. Box-Hernandez does not know who was responsible for either incident, and she never reported the incidents to the authorities because she was afraid to do so.

Box-Hernandez claims asylum based on her membership in a particular social group, that being a Quiche Mayan woman who was abandoned by her husband. In addition to her fear of continued abuse, Box-Hernandez claims that if she were to go back to Guatemala, her in-laws

would think she had returned from the United States with a lot of money and would target her for that.

## C. The Immigration Judge's Decision

After consideration of Box-Hernandez's testimony and claims, the immigration judge found her to be a credible witness; however, the immigration judge noted that credibility is not a key issue because Box-Hernandez did not establish a prima facie case for asylum relief. The immigration judge found that Box-Hernandez's claims for asylum failed because she did not establish she was a member of a cognizable particular social group. The immigration judge then considered the harm Box-Hernandez suffered in Guatemala, finding that it did not rise to the level of persecution, and even if it did, Box-Hernandez had not established the harm was inflicted on account of a protected ground. Finally, the immigration judge considered whether Box-Hernandez had established a well-founded fear of future persecution on account of a protected ground, again finding that, because Box-Hernandez had not established that her membership in a cognizable particular social group, she had not established a well-founded fear.

Finding that Box-Hernandez had failed to satisfy the lower burden of proof required for asylum, the immigration judge concluded that Box-Hernandez had also failed to satisfy the more stringent burden of showing clear probability of persecution for her withholding of removal claim. Additionally, the immigration judge found that Box-Hernandez had not established that she is more likely than not to be tortured should she return to Guatemala, as required for her CAT claim. Accordingly, the immigration judge denied Box-Hernandez's applications for asylum, withholding of removal, and CAT protections.

D. The Board of Immigration Appeals' Decision

Box-Hernandez filed a timely appeal from the immigration judge's decision to the BIA, setting forth three issues: (1) whether the immigration judge erred in finding that Box-Hernandez was not a member of a cognizable particular social group; (2) whether the immigration judge erred in finding that Box-Hernandez did not suffer past persecution on account of a protected ground; and (3) whether the immigration judge erred in finding that Box-Hernandez did not have a well-founded fear of future persecution on account of a protected characteristic.

The BIA dismissed Box-Hernandez's appeal. As to her application for asylum, the BIA held that, even assuming Box-Hernandez had established membership in a cognizable particular social group—married, indigenous Quiche Mayan women abandoned by their husbands—the immigration judge did not err in finding that Box-Hernandez had not demonstrated she had faced or would face harm in Guatemala on account of her membership in this group. As to Box-Hernandez's application for withholding of removal and CAT protections, the BIA dismissed those claims, finding that Box-Hernandez had not meaningfully challenged the immigration judge's denial of either application.

II. ANALYSIS

On appeal Box-Hernandez contends that the immigration judge erred in concluding Box-Hernandez is not eligible for asylum, withholding of removal, and protection under CAT. We review denials of asylum, withholding of removal, and protection under CAT under the "substantial evidence" standard. *See Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007). Where, as here, the BIA issues its own decision in which it agrees with and affirms portions of the immigration judge's decision, we review the BIA's decision as well as those portions of the immigration judge's decision relied upon by the BIA. *See Gilaj v. Gonzales*, 408 F.3d 275, 282-

83 (6th Cir. 2005). "An appellate court will reverse where the evidence in the record 'not only supports a contrary conclusion, but indeed compels it.'" *Mapouya*, 487 F.3d at 405 (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). "The test is not whether this Court might have decided differently but whether this Court is compelled to conclude that the BIA erred." *Dorosh v. Ashcroft*, 398 F.3d 379, 383 (6th Cir. 2004).

A request for asylum "involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the [immigration judge]." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (citation and internal quotation marks omitted). We review the immigration judge's factual determination as to whether a person seeking asylum qualifies as a refugee under the substantial evidence standard, *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992), while "the discretionary judgment to grant asylum to a refugee is 'conclusive unless manifestly contrary to the law and an abuse of discretion.'" *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(D)).

A "refugee" is defined by the INA as a person who is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Necessary to an immigration judge's finding of eligibility, and of particular importance here, is the requirement that the applicant demonstrate that the persecution or well-founded fear of persecution is *on account of* a protected ground. *Elias-Zacarias*, 502 U.S. at 483. To meet this burden, Box-Hernandez must, under the REAL ID Act, show that "membership in a particular social group . . . was or will be at least one central reason for persecuting [her]." 8 U.S.C. § 1158(b)(1)(B)(i). The BIA found that, even if Box-Hernandez had demonstrated that she is part of a cognizable social group of married indigenous Quiche Mayan women abandoned by their

husbands, she had failed to establish that she was targeted *on account of* her membership in the group. The BIA's determination must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Elias-Zacarias*, 502 U.S. at 481 (internal quotation marks omitted). Under this highly deferential standard, we uphold the BIA's determination because the BIA's decision, and the parts of the immigration judge's decision on which the BIA relied, were sufficiently supported by the record.

The immigration judge determined that Box-Hernandez failed to establish she was targeted *on account of* her being a married indigenous Quiche Mayan women who was abandoned by her husband. The judge noted that Box-Hernandez did not provide sufficient evidence that she was harmed or would face future harm due to her membership in the group. The BIA agreed with the immigration judge's decision and explained further that the record indicates that Box-Hernandez's husband's family attacked her because they were unhappy she remained on his land. Moreover, the BIA opined that Box-Hernandez's testimony that her husband's family would harm her if she returned because the family would perceive her to have money belied her stated fear of persecution on account of her social group.

Based on the record, we agree that Box-Hernandez failed to provide sufficient evidence that the harms she experienced or feared she would experience were on account of her membership in a cognizable social group. There was substantial evidence to support the BIA's conclusion that the in-laws harmed Box-Hernandez on account of a personal land dispute, rather than her social group. Box-Hernandez's testimony suggested that her husband's family wanted the land back and was angry that Box-Hernandez would not leave. Box-Hernandez testified that her husband's family called her a "thief" and said it was not her land. She also testified that his family members at one point hit her with a rope "[a]ll because I was living at their sibling's house and land." Box-

Hernandez further testified that her daughters who lived on the land after she left faced similar threats and harm from her husband's family. In all, we cannot say that the evidence in the record compelled the conclusion that Box-Hernandez's social group was one central reason for her persecution. Accordingly, we deny Box-Hernandez's petition for asylum.

Box-Hernandez also petitions for review of the immigration judge's denial of her request for withholding of removal and protection under CAT. The immigration judge concluded that Box-Hernandez did not meet her burden of proof for her withholding of removal or CAT claim. On appeal, the BIA found that Box-Hernandez did not "meaningfully challenge[d] the denial of her applications for withholding of removal or protection under the Convention Against Torture", and "consider[ed] those arguments waived." We agree that Box-Hernandez failed to raise either issue before the BIA, and this Court does not have jurisdiction to consider these claims.[1] 8 U.S.C. § 1252(d)(1); *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005). Thus, we must dismiss Box-Hernandez's claims under § 241(b)(3) of the Immigration and Nationality Act and Article 3 of the Convention Against Torture.

## III. CONCLUSION

For the foregoing reasons, we **DENY** Box-Hernandez's petition for asylum and **DISMISS** her petitions for withholding of removal and CAT protections.

---

[1] We note that Box-Hernandez mentioned withholding of removal in the heading of an argument section, but she failed to address the relevant legal standards governing that claim or ask the BIA to grant that application. In any event, she faces the same nexus requirement for the withholding of removal claim. *See Zhao v. Holder*, 569 F.3d 238, 245 (6th Cir. 2009) ("To establish a claim for withholding of removal, . . . an applicant must demonstrate a clear probability that his life or freedom would be threatened in the country directed for removal on account of his race, religion, nationality, membership in a particular social group, or political opinion.").