**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0841n.06
Filed: November 15, 2006

**No. 05-4600**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LUKE CUTAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF |
| | ) | AN ORDER OF THE BOARD OF |
| ALBERTO GONZALES, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before: BOGGS, Chief Circuit Judge, DAUGHTREY, Circuit Judge, and MILLS,[*] District Judge.

**PER CURIAM.** The petitioner, Luke Cutaj, is a citizen of Albania who seeks review of a decision of the Board of Immigration Appeals (BIA) that affirmed an immigration judge's denial of her claims for asylum, humanitarian asylum, withholding of removal, and relief under the United Nations Convention Against Torture. Before this court, Cutaj argues that she produced "reasonable, substantial, and probative evidence" to support her assertions that she suffered past persecution in her native country because of her political opinions and would be persecuted or tortured again if she returned to Albania. The

---

[*]The Hon. Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

petitioner additionally asserts that the BIA abused its discretion in refusing to grant her motion to remand her case to the immigration court to consider "new evidence" that Cutaj offered before the Board. Because we find no basis upon which to overturn the rulings of the immigration judge or the Board's decision, we deny the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

The petitioner was born in Albania on March 21, 1961, and was raised with her six sisters by her mother and by her father, an anti-Communist who was imprisoned for seven years by the former, totalitarian ruling party of Albania for his political leanings and activities. Despite family hardships, Cutaj herself received a college education and graduated with a degree in veterinary medicine. From the early 1980's until 2000, the petitioner worked for the government, first as a veterinarian in an agricultural cooperative and then as a veterinary inspector for the District of Kurbin. According to her testimony, she also became involved with both the Albanian Democratic Party and with the Women's Forum in the early 1990's, taking the opportunity afforded by her on-the-job travels to discuss with people in the district the problems spawned by the then-ruling Socialist Party during a period of political turmoil in post-Communist Albania.

After November 2, 1999, however, Cutaj began to fear for her life as a result of an incident that occurred that day as she returned home from work. As the petitioner testified before the immigration judge:

> Around two kilometers away from home, there is a village route, so there was no[t a] lot of movement, no cars and no people. It was dusk, so it was getting dark. I was riding my bike, when all of a sudden two individuals came in front of me. So they, I was forced to get off the bicycle and stop. They took my bag that I used to carry the medications. They dragged me on the side of the road, and there were some bushes on the side.

* * * * *

> They started taking my clothes off. Both of them were very strong. I screamed. I fought back with all my heart. It was a tragic event because I wasn't even married. I screamed for help. But they continued to rip my clothes off. And then after some time, then we heard car noise. It appears that they were scared that time and they told me that what we didn't do tonight, we're going to do it again if you continue to talk. And if you talk, not only are we going to rape you, but we're going to kill you.

Cutaj further testified that when she returned to her family's home, she told no one but her father about her ordeal, in part because she believed that the second-class status of women in Albania ensured that she would garner no sympathy and, in part, because she also believed that the police would not be helpful given the fact that a man who had sexually abused the petitioner's four-year-old nephew seven years prior had been released from prison before serving even two years for his crime. Even though Cutaj never again saw her attackers nor suffered any further retribution from them or anyone else, she testified that she lived every ensuing day "scared, panicked and afraid that those individuals will still come back and attack [her] or they will even kill [her]."

Despite her expression of fear, Cutaj did not leave Albania for another five months. On April 16, 2000, she traveled on a forged passport from Albania to Macedonia and, after spending one night in that country, went to Hungary and from there to Canada. On April

- 3 -

20, 2000, she was driven in a truck across the Canadian-United States border into Michigan from where she called a great-uncle, who sheltered Cutaj until she could be taken to New York by another relative. Once in New York, the petitioner eventually requested asylum in this country.

Cutaj's initial application made no mention of her membership in the Democratic Party of Albania or the Women's Forum of that party. Moreover, the narrative statement that she gave in that application about the attack against her indicated that as the assailants left, "they told me that we couldn't [do] what we wanted with you tonight [but] one day we will do it either way and if you say anything to anyone you are not only going to be raped but also killed." There is no suggestion in the affidavit that the attack was politically motivated, even though Cutaj later testified at an evidentiary hearing that she had come to that conclusion prior to leaving Albania. She also asserted that although her attackers "told [her] to shut up so that [she] wouldn't scream," they did so "with a meaning that [she] shouldn't talk about what [she was] talking about outside of event [sic]."

At the conclusion of the hearing, the immigration judge issued an oral ruling denying Cutaj the relief she sought. In relevant part, the immigration judge's decision provided:

> First, . . . the respondent is not credible; thus, she has not demonstrated what happened to her, happened to her in Albania. But assuming, *arguendo*, that you believe the respondent's story as it was told to the Court in her testimony, the Court finds that it [ ] does not rise to the level of past persecution. However, assuming, *arguendo*, that her story and her testimony is true, and it constitutes past persecution, the Government has demonstrated that since she last suffered in Albania, that is this attempted

- 4 -

rape, there has been fundamental change in circumstance[s] such that the respondent would no longer have, objectively or subjectively, a well-founded fear of future persecution. And the Court also notes that the respondent stayed in Albania, continued to work the very same job that she used to proselytize[ ] her position, and apparently had no contact with these so-called socialist thugs and attackers. Thus, even her staying behind in Albania for a number of months demonstrates that she might be able to avoid future persecution by staying in Albania.

Based on these conclusions, the immigration judge denied Cutaj's claims for asylum, asylum on humanitarian grounds, withholding of removal, and relief pursuant to the Convention Against Torture.

The petitioner appealed the rulings to the BIA, which dismissed the appeal after concurring in the immigration judge's reasoning and conclusions. The Board further declined Cutaj's invitation to remand the matter for consideration of a psychologist's report and of other evidence that Cutaj proffered for the first time before the BIA. In doing so, the Board determined that the petitioner had failed to satisfy her burden under 8 C.F.R. §1003.2(c) of establishing that the new documents were previously unavailable to Cutaj and her counsel. The petitioner now asks, on review of the BIA's decision, that we overturn the adverse administrative rulings.

## DISCUSSION

**A. Standard of Review**

We are required to uphold a determination by the BIA as long as the administrative decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). Rather, if we are to overturn a Board's factual determination, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

## B. Request for Asylum

As we have previously explained, "resolution of any request for asylum involves 'a two-step inquiry: first, whether the petitioner is a "refugee" within the meaning of the [Immigration and Nationality Act], and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General.'" *Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006) (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)). *See also INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987); 8 U.S.C. § 1158(b)(1).

Section 1101(a)(42)(A) of title 8 of the United States Code defines the term "refugee" to mean:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return

to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

"An applicant who has been found to have established . . . past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim," 8 C.F.R. § 208.13(b)(1), unless the immigration judge finds, by a preponderance of the evidence, either that:

(A)  There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . on account of . . . political opinion; or

(B)  The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 208.13(b)(1)(i).

Before the immigration judge, Cutaj contended that she was indeed the victim of past persecution in Albania, citing the indignity of being assaulted and nearly raped on account of her political speech, and she also argued that the assault was sufficient to establish a well-founded fear of future persecution.  However, Cutaj offered no documentary or testimonial evidence of the sexual assault other than her own recounting of the events.  Nevertheless, although the burden of proving eligibility for asylum rests upon the petitioner, "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."  8 C.F.R. § 1208.13(a).

Unfortunately for Cutaj, however, the immigration judge concluded that her testimony was not credible because she had not initially claimed in her asylum application that the attack upon her was politically motivated. In fact, Cutaj's written statement attached to her asylum application referred to her attackers only as "criminals" and, although she requested "political asylum" in that narrative, she did not explicitly plead that the sexual attack had political underpinnings. Moreover, the immigration judge concluded that the discrepancies between the petitioner's asylum application and her hearing testimony, coupled with her varying explanations for the initial omissions, went "to the heart of the applicant's claim," a finding that, under *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004), provides a sufficient basis for denying relief based on lack of credibility.

We have, however, recently held that when "discrepancies" between an asylum application and hearing testimony are not a result of inconsistencies, but only of omissions, they will not provide a basis for an adverse credibility finding when the omissions are of specific instances that elaborate on general claims made in the affidavit and do not go to the heart of the claim. *Liti v. Gonzales*, 411 F.3d 631, 639 (6th Cir. 2005). Indeed, "[t]he purpose of holding a removal hearing is not simply to reiterate the statements made in the asylum application, but rather to allow an alien 'to present evidence on the alien's own behalf' including to elaborate on the generalized claims made in the application itself." *Id.* In *Liti*, however, petitioner had originally made general claims of political persecution, which were elaborated at the hearing. Here, petitioner made no mention at all of political motivation in her original asylum application and affidavit or her asylum interview.

In any event, even if the immigration judge believed the petitioner and even if he agreed with Cutaj that the sexual attack constituted "past persecution," the petitioner would still not have been entitled to a grant of asylum in this case because, as the judge noted, "the Government has demonstrated that since she last suffered [the assault] in Albania, . . . there has been a fundamental change in circumstance[s] such that the respondent would no longer have, objectively or subjectively, a well-founded fear of future persecution." Most of this evidence of changed country conditions was gleaned from country reports prepared by the Bureau of Democracy, Human Rights and Labor of the United States Department of State. The 2002 Country Report noted that there were "no confirmed cases of political killings by the Government or its agents," "no reports of politically motivated disappearances," "no confirmed cases of detainees being held strictly for political reasons," and "no reports of political prisoners." Likewise, the 2003 report found no evidence of political killings or politically motivated disappearances, and the most recent country report considered by the immigration judge, the Department of State report compiled in March 2004, concurred that "[t]here were no cases of politically motivated killings in the period 2001-2003." That same report, moreover, summarized positively:

> [T]]here have been no major outbreaks of political violence since 1998, and the available evidence suggests that neither the Government nor the major political parties engage in policies of abuse or coercion against their political opponents. Though serious political repression existed in the past, there are no indications of systemic political persecution in Albania at the present time.

In order to rebut the immigration judge's determination that country conditions in Albania have changed sufficiently such that Cutaj no longer can reasonably claim a well-founded fear of future political persecution, the petitioner must convince us that evidence in the record would *compel* us to reach the opposite conclusion. She has failed to do so in this case.

As for Cutaj's individual circumstances, her narrative testimony at the hearing indicates the randomness of the sexual attack upon the petitioner. Cutaj testified unequivocally that she had never seen her attackers prior to the crime, and, more pertinently, had not seen them or been harassed by them or by anyone else during the five-month period she remained in Albania after the attempted rape. Furthermore, although she claimed on direct examination that she believed she was attacked in retaliation for her "political beliefs and political activities," she then admitted on cross-examination that she had no "evidence whatsoever that would establish or tend to establish that these men that [she] claimed tried to rape [her] had any connection with the government." Consequently, no evidence before the immigration judge, the BIA, or this court suggests, much less compels, the conclusion that Cutaj has a well-founded fear of persecution by the government or its agents if she returned to her family in Albania. We can only conclude from this record that substantial evidence thus supports the immigration judge's and BIA's denials of Cutaj's petition for asylum.

## C. Request for Humanitarian Asylum

Even in the absence of a well-founded fear of future persecution, a petitioner can be granted asylum, in the discretion of the decision-maker, if:

> (A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or
>
> (B) The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

8 C.F.R. § 1208.13(b)(1)(iii). As we have ruled previously, however, "in order to invoke this regulation, the past persecution suffered by the alien must be particularly severe." *Pergega-Gjonaj v. Gonzales*, No. 04-3226, 2005 WL 1027503, at *4 (6th Cir. May 3, 2005). In fact, as the Seventh Circuit has stated, the concept of humanitarian asylum was "designed for the case of the German Jews, the victims of the Chinese 'Cultural Revolution', survivors of the Cambodian genocide, and a few other such extreme cases." *Bucur v. INS*, 109 F.3d 399, 405 (7th Cir. 1997) (citation omitted).

Given the high standard that must be met in order to justify a grant of humanitarian asylum, we cannot say that the immigration judge abused his discretion in denying such relief in this case. Despite the significant trauma experienced by Cutaj as a result of the assault upon her, the petitioner clearly was not forced to endure the severe, prolonged indignities and injuries that have been found sufficient to support a grant of such extraordinary relief. Furthermore, the petitioner has not established a reasonable possibility that she will suffer "other serious harm" if she is removed to Albania. No

evidence exists in the record that her family has suffered "serious harm" by remaining in their homeland or that her attackers would ever resurface to harm her again. Cutaj has thus failed to meet her burden of establishing her eligibility for humanitarian asylum.

**D. Request for Withholding of Removal**

Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Thus, in order to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that [s]he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). Because this burden is "a more stringent burden than what is required on a claim for asylum," *Liti*, 411 F.3d at 640 (quoting *Pilica*, 388 F.3d at 951), it follows from Cutaj's failure to establish her eligibility for asylum that she cannot satisfy the more onerous burden for withholding of removal either. *See*, *e.g. Koliada*, 259 F.3d at 489.

**E. Request for Relief Under The United Nations Convention Against Torture**

To obtain withholding of removal under the UN Convention, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). This

burden is also significantly greater than the burden required to demonstrate eligibility for asylum. Whereas asylum may be granted by the attorney general upon a showing of a "well-founded fear of persecution," withholding of removal under the Convention Against Torture requires a showing that it is more likely than not that Cutaj not only would be persecuted upon her return to Albania, but that she would be *tortured*. Because the petitioner cannot demonstrate entitlement to a grant of asylum in this case, she also cannot meet the more stringent requirements under the Convention Against Torture. *See*, *e.g.*, *Liti*, 411 F.3d at 641.

## F. Failure of BIA to Consider New Evidence Offered by Petitioner

In her final issue on appeal, the petitioner asserts that the BIA erred in failing to remand her case for consideration of evidence that she presented for the first time on her administrative appeal in an effort to shore up her credibility. But, as noted above, even if the immigration judge had found Cutaj to be a credible witness, her claims for relief would not have been granted because of the changed country conditions in Albania. Additionally, "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). The petitioner has failed to establish that the evidence in question was not discoverable at an earlier time or that it could not have been produced at the evidentiary hearing before the immigration judge.

## **CONCLUSION**

For the reasons set out above, we conclude that the petitioner has failed to establish entitlement to the relief she seeks, and we therefore DENY the petition for review in this matter.