NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0153n.06
Filed: February 23, 2009

No. 07-4530

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TATJANA LLUSHO and HERTA LLUSHO, | ) ) ) | |
| Petitioners, | ) | PETITION FOR REVIEW OF A FINAL |
| | ) | ORDER ISSUED BY THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| MICHAEL B. MUKASEY, | ) | |
| | ) | OPINION |
| Respondent. | ) | |

**Before: MARTIN and GILMAN, Circuit Judges; and CARR, District Judge.** [*]

**JAMES G. CARR, DISTRICT JUDGE.** This is a petition for review of a final order issued by the Board of Immigration Appeals [Board or BIA]. The Board dismissed petitioners' appeal from the Immigration Judge's [IJ] decision to deny their applications for asylum, withholding of removal under the Immigration and Nationality Act [INA], and withholding of removal under the Convention Against Torture [CAT].

For the reasons that follow, we **DENY** the Llushos' petition for review of the Board's removal order.

_____

[*] The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

**Background**

Petitioners Tatjana Llusho [Llusho] and her teenage daughter Herta Llusho are both natives and citizens of Albania.[1] Llusho alleges that she suffered past persecution for her political activities and fears future persecution and torture if removed to Albania.

According to Llusho, in 1946, the then-ruling Communist government sent her father to a labor camp for his anti-Communist activities. Upon his release in 1948, the government nationalized his possessions and relocated him to a small village.

During the Communist era, Llusho attended university, but had difficulty gaining permission to do so despite her excellent grades. After finishing school, Llusho was sent to a "center for relocation of politically incorrect people."

Following the collapse of the Communist government in 1996, Llusho and her husband joined the Union for Human Rights Party [UHRP]. Llusho served as vice chair of the women's section of the UHRP and worked as a campaign observer during the 2001 election.

On June 22, 2001, two days before the election, Llusho and her husband were driving home from a UHRP meeting when two unmarked vehicles stopped her car. Four armed men forced Llusho and her husband out of their car and beat them. The men stole their election materials and told them not to leave home on June 24, 2001, election day.

Llusho did not comply with the men's instructions and went to her assigned polling location on election day. There, she observed Democratic and Socialist party representatives attempting to fix the election. When she intervened, the representatives verbally attacked her and called the police.

---

[1] Tatjana Llusho is the primary applicant; Herta Llusho relies on her mother's application. 8 U.S.C. § 1158(b)(3).

When the police officers arrived, they hit Llusho and dragged her into their van, where they handcuffed and detained her for thirty minutes.

When Llusho returned home that evening, she received a threatening phone call. She recognized the caller's voice as one of the men who had attacked her and her husband on June 22. The caller knew Herta was staying with an aunt nearby in Tirana and threatened to kidnap her if Llusho spoke out about the election irregularities. The Llushos immediately went to Tirana to remove Herta from her aunt's house. Llusho and Herta stayed with a cousin until July 13, 2001, when they left for the United States. Her husband remained in Albania. On September 9, 2001, Llusho returned to Albania and Herta remained in the United States with her aunt.

One month later, Llusho started receiving phone calls from a man threatening her and demanding money. Llusho contacted the police, but they ignored her requests for assistance. Then, on December 2, 2001, as Llusho walked down the street with a neighbor, four men tried to kidnap her. The men beat her and tried to drag her into a van, but she escaped with the aid of her neighbor and other witnesses. Llusho later testified that the van in question was a police van. Llusho states that one of the men had been involved in the June 22 attack.

On January 12, 2002, Llusho returned to the United States. Llusho's and Herta's visas expired on October 11, 2002. On November 29, 2002, the Immigration and Naturalization Service [INS] served the Llushos with Notices to Appear and charged them with removability as non-immigrants who had exceeded their lawful stay in the United States. 8 U.S.C. § 1227(a)(1)(B). Llusho conceded the removability charge, but she requested asylum, withholding of removal under the INA and withholding of removal under the CAT.

## Opinions of the IJ and BIA Appeals

In an oral decision, the IJ denied petitioners' requests for asylum, withholding of removal under the INA and withholding of removal under the CAT. The IJ based her decision primarily on her finding that Llusho was not credible because of two allegedly inconsistent statements.

First, when the IJ asked Llusho if the police had "beaten" her on July 24, 2001, she answered, "Yes." Joint Appendix [J.A.] at 114-15. Before this, Llusho had testified that the police hit and dragged her, but never used the word "beaten." The two documents that Llusho submitted to support her claim did not refer to a beating. The witness statement noted that police "pulled" Llusho and took her outside and the UHRP chairman's letter to the election council said that "organized and militant violence [was] exercised against [an] observer and member." J.A. at 115.

Second, Llusho testified that the men who attempted to kidnap her in December 2001 drove a police van. Statements in her asylum applications and the witness statement, however, did not indicate the involvement of a police vehicle.

The IJ found alternatively, that even if Llusho was credible, she failed to meet her burden of proof establishing that she suffered past persecution. The IJ determined that only two events – the incidents on June 22 and 24 – could be attributed to Llusho's political activities and that neither "r[o]se to the level of the type of severe past persecution so as to render the respondent subject to protection under the Act." [2] J.A. at 49. The IJ discredited much of Llusho's testimony about the Communist government's persecution of her family, noting that she was allowed to attend university.

---

[2] The IJ excluded the December kidnapping attempt from consideration because Llusho failed to establish that she was targeted for her political activities. Noting that Llusho's husband is a prominent businessman, the IJ determined that the attempted kidnapping could have been motivated by a non-political attempt to extort money from the family.

Finally, the IJ found that even if Llusho was credible and had suffered past persecution, the government presented sufficient evidence to rebut the presumption that past persecution establishes a well-founded fear of future persecution. Because the UHRP is now in a coalition with the ruling Democratic party, the IJ determined that Llusho "no longer has a well-founded fear of persecution upon her return." J.A. at 52. The IJ also noted that Llusho's husband, who was "equally active" in the UHRP, has not suffered harm while remaining in Albania. J.A. at 52.

## Standard of Review

The Immigration and Naturalization Act grants this Court jurisdiction to review an order by the BIA. 8 U.S.C. § 1252. When the Board of Immigration Appeals affirms the Immigration Judge without issuing its own opinion, we review the Immigration Judge's opinion. *Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (6th Cir. 2008).

When reviewing a final order of removal, we review factual findings under the substantial evidence standard, which means that findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. *Id.* at 672-73 (internal citations omitted). We review legal determinations de novo. *Zoarab v. Mukasey,* 524 F.3d 777, 780 (6th Cir. 2008).

## Discussion

### I. Asylum

An applicant for asylum bears the evidentiary burden of proof and persuasion. *Matter of Dass,* 20 I. & N. Dec. 120 (BIA 1989). An applicant's testimony "can be sufficient to support an application for asylum where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear." *Perkovic v. I.N.S.*, 33 F.3d 615, 621 (6th Cir. 1994) (internal citations omitted).

5

An applicant for asylum must establish – with credibility – that she is a refugee by demonstrating either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Ndrecaj*, 522 F.3d at 674.

Courts presume that an applicant who has suffered past persecution based on a statutorily protected classification has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). The government can rebut this presumption by establishing, by the preponderance of the evidence, that such fear is no longer warranted due to changed country conditions. *Id.*

Assuming arguendo that Llusho suffered past persecution, we find that substantial evidence supports the IJ's alternative determination that the government presented sufficient evidence of Albania's changed country conditions to rebut the presumption that Llusho has a well-founded fear of future persecution.

This Court has found that Albania's country conditions have changed such that political persecutions are no longer a significant problem. *See Prifti v. Gonzales*, No. 04-3909, 2005 WL 3113514, at *2 (6th Cir. Nov. 18, 2005) ( "[D]espite the prevalence of crime and police corruption, 'there is virtually no evidence that individuals are targeted for mistreatment on political grounds.'"); *Gilaj v. Gonzales*, 408 F.3d 275, 288 (6th Cir. 2005) ("There is documentation in the record that suggests that conditions in Albania have changed in recent years.").

In fact, this Court has affirmed decisions of other immigration judges who have denied similar asylum applications, gleaning information from United States Department of State reports. *See, e.g., Hyzoti v. Mukasey*, 269 F. App'x 563, 567 (6th Cir. 2008) (affirming denial of asylum based on changed country conditions where applicant was presumed to have established past

6

persecution); *Cutaj v. Gonzales*, 206 F. App'x 485, 491 (6th Cir. 2006) (affirming IJ's reliance on 2004 State Department report stating that "there are no indications of systemic political persecution in Albania at the present time").

The record in this case includes the 2004 and 2005 Department of State Human Rights Reports for Albania. Llusho neither rebuts the information contained in these reports nor attacks our precedents describing Albania's changed country conditions. She has failed to present any evidence that she is likely to be harmed if removed to Albania today. Her applications are based on events that occurred nearly six years ago, the Democratic Party is now in power, and her husband, equally active in the UHRP, has not suffered harm.

Therefore, we find that substantial evidence supports the IJ's conclusion that Llusho does not have a well-founded fear of future persecution. Accordingly, we conclude that Llusho is not eligible for asylum.

## II.  Withholding of Removal Under the INA and CAT

The standards for withholding of removal under the INA and the CAT are stricter than those for asylum. Under the INA, the applicant must demonstrate a "clear probability" that removal will result in a threat to her life or freedom based on race, religion, nationality, membership in a particular social group, or political opinion. *Thap v. Mukasey*, 544 F.3d 674, 681 (6th Cir. 2008); 8 U.S.C. § 1231(b)(3)(A).

The CAT requires an applicant to establish that it is "more likely than not" that she will be tortured if removed. 8 C.F.R. 208.16(c)(2). Because the IJ correctly determined Llusho's ineligibility for asylum, it follows that Llusho would have been unable to "satisfy the more stringent

standard for withholding of [removal]." *See Koliada v. I.N.S.*, 259 F.3d 482, 489 (6th Cir. 2001). The IJ, therefore, correctly denied withholding of removal under the INA and the CAT.

## Conclusion

For the foregoing reasons, we **DENY** the Llushos' petition for review of the removal order and **AFFIRM** the decisions of the Board of Immigration Appeals and Immigration Judge.