NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0507n.06

No. 10-4590

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 16, 2012*

LEONARD GREEN, Clerk

BARTOLOME NICHOLAS-BARTOLOME, et al.,

    Petitioners,

v.

ERIC H. HOLDER JR., Attorney General,

    Respondent.

ON PETITION FOR REVIEW
FROM THE BOARD OF
IMMIGRATION APPEALS

_____ /

BEFORE:     SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.**   Petitioners Bartolome Nicolas-Bartolome, his wife Ana Nicolas, and their daughter Estela Nicolas Gaspar (collectively "Petitioners") petition for review a decision of the Board of Immigration Appeals ("BIA") denying their application for asylum and withholding of removal. For the reasons set forth below, we **DENY** the petition.

## BACKGROUND

Petitioners are natives and citizens of Guatemala. Bartolome Nicolas-Bartolome and Anna Nicolas are father and mother, respectively, to daughter Estella Nicolas Gaspar. Petitioners are members of the Quiche tribe, an indigenous ethnic group in Guatemala, and Bartolome Nicolas Bartolome ("Bartolome") worked as a farmer in the fields.

Bartolome illegally entered the United States on April 25, 1989 to escape the on-going civil war in his native country of Guatemala. On December 1, 1993, Bartolome filed an application for

benefits under the Nicaraguan and Central American Relief Act (NACARA) as well as applications for asylum and withholding of removal on the basis of past persecution and a well-founded fear of persecution on account of his political opinion and his family's membership in a particular social group, the Quiche-speaking indigenous group.[1] An immigration examiner interviewed Bartolome in 1994. Petitioners filed applications for Special Rule Cancellation of Removal with the Department of Homeland Security ("DHS") on December 21, 2005.

An Asylum Officer interviewed Bartolome on September 6, 2006.[2] The Asylum Officer stated in his assessment that Bartolome requested asylum because he feared persecution in Guatemala on account of his membership in a particular social group. The Asylum Officer noted that Bartolome did not claim membership to a particular social group nor did he allege any mistreatment by the guerrillas. Based on this information, the Asylum Officer found Bartolome ineligible for asylum and referred the matter to the immigration judge ("IJ"). DHS denied Petitioners' applications, and on September 20, 2006, initiated removal proceedings. At the March 27, 2007 removal hearing, Petitioners admitted to the allegations in the Notice to Appear, conceded removal, and renewed their applications for asylum and withholding of removal.

---

[1] The IJ determined that Bartolome was ineligible for NACARA relief because he untimely submitted his application. According to the IJ, Bartolome needed to submit his application on or before December 31, 1991.

[2] The record is void of any explanation as to why the asylum office did not interview Bartolome upon his initial application for asylum but instead referred his application to the immigration court in 2006.

## A.      The IJ Decision

The IJ conducted a hearing on March 27, 2008.  The IJ heard testimony from Bartolome, his wife, and his friend Nicolas Bartolome.  Bartolome alleged that in 1985, during the Guatemalan civil war, Quiche-speaking guerrillas came to his family's house, attacked him, his wife, and children, and attempted to recruit him to join the guerrillas. The guerrillas are members of the Hispanic ethnic group, that spoke many of Guatemala's indigenous languages, and attempted to usurp the country's government.  Bartolome refused to join the guerrillas stating that he "did not want to take sides in the conflict between the guerrillas and the government."  According to Bartolome, the guerrillas made death threats and also threatened to separate him from his family.  As a result of these threats, Bartolome stated that he joined the civil patrol to protect himself and his village.  He estimated that approximately 50 men participated in the civil patrol.  Bartolome testified that the army also tried to recruit him but he also declined because he wanted to stay neutral in the conflict.  Bartolome stated that he only recalled one direct incident with the guerrillas but he claimed that they continued to harass his village.  Bartolome further stated that he never saw any other violent attacks by the guerrillas but did hear about the guerillas killing at least one villager and another villager was allegedly tortured and hanged by the guerrillas.

Bartolome testified that he fled the country in 1989 and came to the United States because he wanted to protect himself from the guerrillas.  His family remained in Guatemala until 1997. Bartolome returned to Guatemala in 1998 to attend his father's funeral and he remained in the country for two months.  He stated that he did not encounter any problems with the guerrillas

3

because they no longer existed, but he claimed that the guerrillas remained a threat because they continued to assault and harass the indigenous population.

In their applications for asylum and withholding of removal, Petitioners also submitted country reports and newspaper articles that discussed the country's conditions with respect to its indigenous population. After the conclusion of the hearing, the IJ issued an oral decision and order denying Petitioners' applications. First, the IJ found both Bartolome's and his wife's persecution claims not credible. The IJ stated that he was unable to determine "who was injured and what the extent of the injury might have been." The IJ also noted that Bartolome provided inconsistent responses during his interview with the Asylum Officer, on his asylum application, and during the IJ hearing. These responses ranged from Bartolome never experiencing mistreatment while in Guatemala to his testimony that the guerrillas physically attacked him and his family. The IJ stated that even if Petitioners were found credible, Petitioners failed to demonstrate eligibility for asylum or withholding of removal.

Second, the IJ found that Petitioners failed to meet their burden of proof that they suffered past persecution in Guatemala. In particular, the IJ commented that Bartolome's single incident with the guerrillas did not constitute persecution as no blood was drawn and Bartolome did not seek medical attention.

Third, the IJ found that Petitioners failed to establish a well-founded fear of persecution should they return to Guatemala. The IJ concluded that "there is no reliable evidence in the record that the guerrillas, in the one time they encountered respondent in 1985 to attempt to recruit him, did so on account of one of the five protected grounds." Moreover, the IJ noted that the four-year lapse

between the time that the guerrillas allegedly attacked Petitioners in 1985 and the time that Bartolome left Guatemala for the United States in 1989 demonstrated a lack of immediacy in any perceived threat of persecution. Furthermore, Bartolome's two-month return to Guatemala in 1998, in which he was unharmed and not bothered by the guerrillas, substantially weakened his well-founded fear of persecution claim. The IJ also found no evidence to support Bartolome's claim that the Guatemalan government attempted to recruit him into the army for any reason other than defending the country.

The IJ further found unconvincing Petitioners' claim that they are members in a particular social group. The IJ stated that Petitioners' social group—the Quiche ethnicity—"lacks the requisite social visability " because the record provides no evidence that this particular social group exists. Moreover, the IJ determined that there is no evidence that the guerrillas are currently targeting the Quiche ethnic group because the guerrillas are no longer in existence. The IJ noted that Bartolome testified to this point when he stated that the guerrillas have disbanded. The IJ stated that Petitioners' background materials did not provide reliable evidence to support their contention that the guerrillas were or remain a threat to the Quiche ethnic group. Based on these reasons, the IJ concluded that Petitioners did not demonstrate eligibility for asylum or withholding of removal. The IJ, however, granted Petitioners' post-hearing voluntary departure request.

**B.      The BIA Decision**

On appeal, the BIA affirmed the IJ's decision on October 28, 2009. The BIA agreed with the IJ's determination that Bartolome did not provide credible testimony. In addition, the BIA noted that the "single instance of mistreatment described by him does not rise to the level of persecution."

However, the BIA vacated the IJ's order granting Petitioners voluntary departure because Petitioners failed to provide proof of payment of the voluntary departure bonds.

Petitioners filed a petition for review to the Sixth Circuit on November 20, 2009, but the matter was remanded on June 4, 2010 to allow the BIA to review Petitioners' eligibility for voluntary departure in light of its decision in *Matter of Velasco*, 25 I&N Dec. 143 (BIA 2009). On November 22, 2010, the BIA issued an order vacating the IJ's order granting Petitioners voluntary departure but reissued its prior decision affirming the IJ's judgment of Petitioners' eligibility for asylum and withholding of removal. Petitioners now timely seek review of the BIA decision.

**DISCUSSION**

### I. Statutory Framework

The Attorney General may use his discretion to grant asylum to any alien who demonstrates that he is a "refugee" under section 208(a) of the INA, 8 U.S.C. § 1158(a). According to the statute, a "refugee" is defined as an alien "who is unable or unwilling to return to. . . [his] country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . . " 8 U.S.C. § 1101(a)(42)(A). Because Petitioners filed their applications for asylum and withholding of removal prior to May 11, 2005, the provisions of the REAL ID Act do not apply. *See* REAL ID Act of 2005, §§ 101(a)(3), 101(c), 101(d), Div. B. of Pub. L. No. 109–13 Stat. 302, 303 (2005); *see also Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006).

## II. Analysis

### A. Adverse Credibility Determination

Where, as here, the BIA does not summarily affirm the IJ's decision, but reviews the IJ's decision and issues a separate opinion, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Questions of law are reviewed *de novo*. *Id*. The BIA's conclusion that an alien failed to testify credibly is a factual determination reviewed under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias Zacarias*, 502 U.S. 478, 481 (1992); *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). "An adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005) (quoting *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)).

Petitioners first argue that there is insufficient evidence to support the BIA's adverse credibility determination. In its order denying asylum relief, the IJ referred to a number of discrepancies between statements Bartolome made to the Asylum Officer and his testimony at the IJ hearing. The IJ noted that Bartolome disclosed to the Asylum Officer that his family suffered no harm at the hands of the guerrillas. However, during the IJ hearing, Bartolome and his wife provided inconsistent testimony as to whether the guerrillas actually injured or threatened to injure their family. The IJ found and the BIA agreed that Bartolome provided "evasive," "discursive," and "non-responsive" testimony, even when answering questions posed to him by his own counsel regarding the mistreatment the guerilla forces inflicted on him. The IJ further stated that Bartolome "offers a variety of formulations about what happened to him and his wife in Guatemala. Either

7

[Bartolome] was injured by the guerrillas or [Bartolome] and his wife were injured by the guerrillas or [Bartolome], his wife, and family members, including young children were injured by the guerrillas." (AR 108–09.) In addition, the IJ commented that his wife also appeared confused about what happened and could not corroborate Bartolome's testimony. The BIA further elaborated by stating that Bartolome provided "conflicting testimony regarding which, if any, family members were beaten by the guerrillas." (BIA decision 2.)

The BIA's adverse credibility determination was supported by substantial evidence. Bartolome provided inconsistent accounts of his story throughout the application process including in his asylum application, at his asylum interview, and before the immigration court. First, Bartolome indicated on his asylum application that he was neither harmed nor mistreated by anyone in Guatemala and that others similarly situated to him also did not incur attacks by the guerrillas. Second, Bartolome admitted in his assessment with the Asylum Officer that he did not belong to any particular social group and that he never personally experienced mistreatment nor did any members of his family. Moreover, the assessment stated that Bartolome did not make any claims of past persecution and his sole reason for leaving Guatemala was due to fears of poverty and economic deprivation. The Asylum Officer noted that Bartolome did not make any statements regarding the attack by the guerrillas or provide an explanation as to why the Quiche indigenous group was specifically targeted by the guerrillas.

Finally, the IJ appropriately noted that Bartolome and his wife gave confusing testimony at the IJ hearing. During the hearing, Bartolome initially stated that the guerrillas came to his house and assaulted both him and his wife. Later, Bartolome clarified his statement and claimed that the

guerrillas only threatened him after he refused to join their rebellion against the government. Bartolome's wife could not corroborate his testimony. She stated during the IJ hearing that she recalled being hit by the guerrillas at home but then she stated that she could not remember exactly what transpired with the guerrillas.

In addition, Bartolome's testimony at the IJ hearing contradicts his prior statements. As previously discussed, Bartolome initially told the Asylum Officer that neither he nor his family suffered mistreatment by the guerrillas; however, at the IJ hearing Bartolome claimed that his interpreter provided a faulty translation and he in fact was attacked by the guerrillas. When asked by the IJ to explain the gaps in translation in the interview, Bartolome stated that the interpreter conducted the interview in Spanish while his native language is Quiche. But the attorney for the government noted that Bartolome brought his own interpreter to the interview and there was no indication in the record to suggest that Bartolome had trouble understanding the questions posed by the interpreter and he never raised any objections about the questions.

Accordingly, substantial evidence supports the BIA's adverse credibility determination. Bartolome provided inconsistent accounts of his alleged mistreatment by the guerrillas in his asylum application, asylum interview and at the IJ hearing. In addition, Bartolome's wife also gave conflicting testimony during the IJ hearing, which failed to corroborate Bartolome's fear of persecution should the family return to Guatemala.

### B.    Persecution

We review relevant administrative factual findings under the deferential "substantial evidence" standard. The BIA's factual findings must be upheld if "supported by reasonable,

9

substantial, and probative evidence on the record considered as a whole." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks omitted)). Under this standard, findings of fact by the BIA and the IJ "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To determine whether Petitioners qualify for asylum, we conduct a two-step inquiry: (1) whether Petitioners qualify as refugees based on 8 U.S.C. § 1101(a)(42)(A), and (2) whether Petitioners merit a "favorable exercise of discretion by the [IJ]." *Yu*, 364 F.3d at 702.

Petitioners' eligibility for asylum depends on whether they can "establish either that [they have] suffered actual past persecution or that [they have] a well-founded fear of future persecution," on account of race, religion, nationality, membership in a particular social group, or political opinion. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004); *see also* 8 U.S.C. § 1101(a)(42)(A).

We define persecution as follows:

> Persecution encompasses more than threats to life or freedom; non-life threatening violence and physical abuse also fall within this category. However, to sustain an asylum application, the conduct must rise above mere harassment. Types of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.

*Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (citations omitted). Persecution requires "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998).

Petitioners argue that they experienced past persecution and maintained a well-founded fear of persecution on account of Bartolome's political opinion and Petitioners' membership in a particular social group—the Quiche-speaking indigenous population. The IJ found and the BIA agreed that Petitioners failed to establish past persecution and Petitioners could not carry their burden of showing a well-founded fear of persecution. In making this determination, the IJ considered Petitioners' application for asylum, Bartolome's interview with the Asylum Officer, Petitioners' testimony at the IJ hearing, and country condition reports.

### 1.  Past Persecution

Petitioners' past persecution claim rests on their belief that the guerrillas targeted Bartolome and his family because he expressed neutrality in the conflict between the guerrillas and the government. As a result, Petitioners claim that he and his family were threatened and beaten. Petitioners also argue that they are members of the Quiche-speaking indigenous population of Guatemala, which constitutes a particular social group that is entitled to asylum under the statute.

The BIA agreed with the IJ's determination that Bartolome "provided insufficient evidence to establish the guerrillas mistreated him on account of his political opinion, Quiche ethnicity, or any other protected ground." (BIA Decision 3.) The BIA further noted that the record did not provide any evidence to establish that the "guerrillas ascribed to any specific political opinion to him or sought to overcome any political beliefs they perceived that he held." (*Id*.)

In this case, substantial evidence supports the BIA's determination that Petitioners did not suffer harm rising to the level of persecution. Contrary to Bartolome's position that his political neutrality in the conflict between the guerrillas and the Guatemalan government constituted a

11

political opinion, there is no evidence in the record to conclude that the guerrillas specifically targeted him because of this neutrality or because of his membership with the Quiche indigenous population. "It is not enough to present evidence that the applicant *had* a political opinion or *was* a member of that social group. Evidence must be presented which suggests that the applicant was persecuted *on account of* or *because of* the political opinion." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (internal citation omitted). Petitioners offer no evidence that the guerrillas knew of or targeted Petitioners as a result of their political neutrality or membership in the Quiche group.

Petitioners' claim also fails because Bartolome testified only to one incident where he and his family were allegedly attacked and beaten by the guerrillas. Petitioners must show that "he or she was specifically targeted by the government for abuse based on a statutorily protected ground." *Gilaj*, 408 F.3d at 285. In this case, Petitioners failed to provide any indication of the guerrillas' motives in targeting the Quiche ethnic group or those who expressed neutrality in the civil war. For these reasons, the record does not compel the conclusion that Petitioners established past persecution or a well-founded fear of persecution on account of a protected ground. As the BIA correctly found, this incident falls short of the showing Petitioners were required to make in order to meet their burden of proving past persecution. *See Lumaj v. Gonzales*, 462 F.3d 574, 577–78 (6th Cir. 2006) (finding that a single incident where an applicant was forced into a car, beaten, and suffered a bodily injury did not amount to persecution because it was not severe in nature); *see also Japarkulova v. Holder*, 615 F.3d 696, 701 (noting that "[i]n the vast majority of cases, . . . mere threats will not, in and of themselves, compel a finding of past persecution.") (citation omitted). Petitioners make no additional claims of persecution beyond the single incident and they fail to provide proof that the

guerrillas routinely persecuted those who expressed political neutrality or were members of the Quiche group.

In addition, Bartolome could not specify whether the guerrillas continued to mistreat not only him but other people in his village. When asked on direct examination whether any members of Bartolome's village were harmed by the guerrillas, Bartolome responded that he was unsure whether the guerrillas posed an actual threat to his village. He stated that he did not actually see the guerrillas harming any one but "just heard" about it. He then emphasized that he never observed any acts of violence or mistreatment by the guerrillas. Despite this testimony, Bartolome now claims that because he experienced a relatively non-violent attack by the guerrillas, then heard about the possibility of threats made to other villagers, and subsequently is afraid that such possibilities may happen to him and his family, allegedly constitutes sufficient proof of past persecution. But Petitioners' arguments of feared treatment are essentially based on hearsay evidence and the record does not compel a reversal of the BIA's conclusion on the issue of past persecution.

## 2. Well-Founded Fear of Persecution

Next, Petitioners claim that the record compels a finding of a well-founded fear of persecution. Because Petitioners did not suffer past persecution, they are not entitled to a presumption of future harm. *See* 8 C.F.R. § 1208.16(b)(2). Instead, Petitioners carry the burden of showing a well-founded fear of persecution on account of a protected ground. *Id*. Petitioners submit as evidence United States Department of State Country Reports and other articles, that mention "indigenous people" as a particular social group within Guatemala.

13

We agree with the BIA's determination, which found that Petitioners provided insufficient evidence to meet their burden of proof of establishing a well-founded fear of persecution. Specifically, the BIA noted that Bartolome's documentary evidence contradicts his statement that the guerrillas "have formed gangs and continue to seek out and persecute him on a protected ground." (BIA Decision 3.) The BIA found that Bartolome's evidence shows that the Guatemalan civil war ended more than fifteen years ago and the guerrillas do not maintain a strong presence in the country. Bartolome even conceded this point during the IJ hearing when he stated, "there is no guerrillas anymore. There are no guerrillas. They said that there is peace there." (AR 202.) Moreover, Bartolome admitted during the IJ hearing that upon his return to the country in 1998, he did not experience any harm or threats by the guerrillas. Bartolome's two-month stay in Guatemala is inconsistent with Petitioner's now stated fear of returning to his native country. Bartolome's admission that his return to Guatemala was relatively safe and free from any interaction with the guerrillas further supports the BIA's decision that there is no real threat of individualized persecution.

Additional evidence further supports the BIA's decision that a fear of persecution no longer exists. We previously stated in *Pascual v. Mukaskey* that the conflict between the guerrillas and the Guatemalan government ended in 1996 and further stated that "as the war subsided, so did any objectively reasonable fear of persecution." 514 F.3d 483, 488 (6th Cir. 2007). The country reports that Petitioners submit are also unpersuasive. The U.S. Department of State Report does not even identify the Quiche group as part of its discussion in the indigenous people section. Furthermore, the country report does not mention that Guatemala's indigenous population continues to experience

14

persecution by the guerrillas; rather, the report discusses their continued plight to receive equal treatment in the country's political, economic, and social opportunities. In sum, the BIA properly concluded that Petitioners failed to demonstrate either past persecution or a well-founded fear of persecution on account of a protected ground.

### III.     Withholding of Removal

An alien seeking withholding of removal must show a "clear probability" that he will face persecution on account of a protected ground in the country to which he will be removed. *INS v. Stevic*, 467 U.S. 407, 430 (1984). "Withholding of removal is mandatory if an alien establishes that his 'life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." *Pilica*, 388 F.3d at 951 (quoting 8 C.F.R. § 208.16(b)). Under this standard, an alien must show that it is "more likely than not" that he will be subject to persecution on account of a protected ground if returned to his native country. *Pilica*, 388 F.3d at 951.

To qualify for withholding of removal, an alien must show a "clear probability" of persecution. *Liti*, 411 F.3d at 640. In addition, an alien must establish that "it is more likely than not that [he] . . . would be persecuted on account of [a protected ground] upon removal to that country." *Haider v. Holder*, 595 F.3d 276, 284 (6th Cir. 2010) (alterations in original) (quoting 8 C.F.R. § 208.16(b)(2)).

Petitioners contend that the BIA erred in denying their application for withholding of removal. Under 8 U.S.C. § 1231(b)(3), "[a]n alien seeking withholding of removal must demonstrate that there is a clear probability that he will be subject to persecution if forced to return

to the country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (internal quotation marks and citation omitted). "Because an alien must meet a higher burden in establishing a right to withholding of removal than in demonstrating asylum eligibility, an alien who fails to qualify for asylum necessarily does not qualify for withholding of removal." *Id.* The clear probability standard is higher than the "well-founded fear" standard necessary to establish eligibility for asylum and requires Petitioners to show that it is "more likely than not" that they will be subject to persecution on account of a protected ground if returned to Guatemala. Because Petitioners failed to satisfy their burden for asylum protection, Petitioners also failed to qualify for withholding of removal.

## CONCLUSION

Substantial evidence supports the BIA's adverse credibility determination as Petitioners provided inconsistent testimony during the IJ hearing and there were several noted discrepancies within Petitioners' applications for asylum and withholding of removal concerning the perceived threat of the guerrillas. *See El Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009). In addition, Petitioners failed to establish past persecution or a well-founded fear of persecution if removed to Guatemala that would entitle them to asylum or withholding of removal. For these reasons, we **DENY** the petition for review.