NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0267n.06

No. 14-3741

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 14, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ERLIN GONZALEZ-ISAGUIRRE, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| **Respondent.** | ) | **OPINION** |
| | ) | |

BEFORE: SILER, MOORE, and STRANCH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Erlin Gonzalez-Isaguirre petitions this court to review the denial of his application for withholding of removal and Convention Against Torture ("CAT") relief by an immigration judge ("IJ") and the Board of Immigration Appeals ("BIA").[1] The IJ found Gonzalez-Isaguirre to be not credible and, even assuming credibility, found his application for relief to be without merit. The BIA affirmed, in an opinion largely concurring with the reasoning of the IJ's decision. Because we agree with the BIA's merits determination, we **DENY** Gonzalez-Isaguirre's petition for review.

---

[1]Gonzalez-Isaguirre initially applied for asylum as well. Both the IJ and the BIA, however, found Gonzalez-Isaguirre ineligible for such relief because he filed his application more than a year after his arrival in the United States and did not provide sufficient evidence to qualify for an exception to this filing requirement. *See* BIA Dec. at 2 (C.A.R. at 4); 8 U.S.C. § 1158(a)(2)(B). Gonzalez-Isaguirre does not contest this finding on appeal, and concedes that he is ineligible for asylum. *See* Pet'r Br. at 23 n.3.

## I. BACKGROUND

Gonzalez-Isaguirre is a thirty-eight year old native of Nicaragua. He left that country in 2003, purportedly to escape persecution for his political opposition to the Sandinista party. IJ Hr'g Tr. at 18–19 (C.A.R. at 118–19). According to Gonzalez-Isaguirre, his family has long been opposed to the Sandinistas. *Id.* at 21–23 (C.A.R. at 121–23). He testified specifically about the experiences of his uncles Fabian, Julio, and Avelio. According to Gonzalez-Isaguirre, Fabian was a bodyguard to Anastasio Somoza DeBayle, the political leader of Nicaragua prior to the Sandinista government's coming into power. *Id.* at 25 (C.A.R. at 125). Fabian was allegedly imprisoned for ten years for his relationship with Somoza; he has since been released. *Id.* at 25, 55 (C.A.R. at 125, 155). Gonzalez-Isaguirre also spoke about a second uncle who was killed in the Nicaraguan civil war, between 1980 and 1990. *Id.* at 27, 53 (C.A.R. at 127, 153). Gonzalez-Isaguirre could not initially recall this uncle's name, but eventually confirmed that his name was Julio, after his attorney referred to a letter of support submitted by Gonzalez-Isaguirre's mother mentioning Julio's name. *Id.* at 46 (C.A.R. at 146). Finally, Gonzalez-Isaguirre discussed a third uncle, Avelio, who checked into the hospital in 1985 at age fifteen with a broken arm. *Id.* at 28 (C.A.R. at 128). Avelio died of cerebral hypoxia, which Gonzalez-Isaguirre alleges "was [an] intentional political act [by the hospital] and not basically medical malpractice." *Id.* at 29 (C.A.R. 129). When asked to provide evidence of this attributed intent, however, Gonzalez-Isaguirre conceded that "I don't, I don't have any proof." *Id.* at 30 (C.A.R. 130).

Later, when asked if there were any other members of his family, outside of his uncles, who "had harm done to them because of their opposition to the Sandinistas," Gonzalez-Isaguirre responded that "only my mother had some threats." *Id.* According to Gonzalez-Isaguirre, his mother has been threatened with violence since 1980, when the Sandinistas first came into power. These threats usually spike around election time; in some instances, Sandinista supporters have thrown stones at Gonzalez-Isaguirre's house. *Id.* at 34 (C.A.R. at 134). Gonzalez-Isaguirre also stated that his mother was "pushed by [a] soldier with [a] weapon" when she tried to retrieve Avelio's body from the hospital in 1985. *Id.* at 32 (C.A.R. at 132). "Nobody has hit her," however, since at least 2006. *Id.* at 45 (C.A.R. at 145). Gonzalez-Isaguirre's mother, father, and sister all currently live in Ciudad Dario, Nicaragua, Gonzalez-Isaguirre's hometown. *Id.* at 19 (C.A.R. at 119).

Finally, with respect to incidents against himself, Gonzalez-Isaguirre's account varies. In a two-page attachment to his I-589 application, which he prepared with the assistance of counsel, Gonzalez-Isaguirre mentions only the incidents against his uncles and his mother, without discussing any persecution that he personally faced. During his IJ hearing, however, Gonzalez-Isaguirre described having "stones, knives, [and] even bullets" thrown at him for speaking out against the Sandinistas. *Id.* at 35 (C.A.R. at 135). He conceded, however, that he had "not received physical harm" as a result of any of these incidents. *Id.* Later, in response to a question about whether he had ever been physically wounded, Gonzalez-Isaguirre stated that "[n]o, I, I have received, you know, blows or hits, but not, not, nothing that had caused a break of any

kind." *Id.* at 41 (C.A.R. at 141). He explained that the omission of these incidents in his I-589 was likely the result of a miscommunication with his attorney. *Id.* at 38–39 (C.A.R. at 138–39).

If returned to Nicaragua, Gonzalez-Isaguirre believes that Sandinista supporters will hurt him because of his prior political activity, *id.* at 46 (C.A.R. at 146), even though he admitted that he was no longer a member of any political party, *id.* at 21 (C.A.R. at 121), and even though the PLC, the party that Gonzalez-Isaguirre most closely identifies with, currently holds several seats in the Nicaraguan government. Gonzalez-Isaguirre did not discuss at his IJ hearing any past incidents of torture against either him or his family members.

The IJ denied Gonzalez-Isaguirre's application for withholding of removal and CAT relief. In an oral decision, the IJ found Gonzalez-Isaguirre to be not credible, after hearing him describe in detail the personal persecution he suffered in Nicaragua—a description uncorroborated by the evidence contained in his I-589 application. IJ Dec. at 10–11 (C.A.R. at 71–72). The IJ also concluded that Gonzalez-Isaguirre's withholding claim would fail on the merits—i.e., even if found credible, Gonzalez-Isaguirre had failed to demonstrate that he would more likely than not be persecuted if returned to Nicaragua. *Id.* at 14 (C.A.R. at 75). The IJ noted that Gonzalez-Isaguirre had provided no evidence of having suffered physical harm at the hand of the Sandinistas, and that, by his own admission, his family members—his uncle, his parents, and his sister—were now living unharmed in Nicaragua. *Id.* at 15 (C.A.R. at 76). The IJ likewise denied Gonzalez-Isaguirre's request for CAT relief. In a three-page reasoned

opinion, the BIA affirmed the IJ's order, substantially echoing the IJ's analysis. This petition for review timely followed.

## II. ANALYSIS

### A. Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). However, "[t]o the extent the BIA adopted the immigration judge's reasoning," we "review the immigration judge's decision." *Id.* We review legal conclusions made by the BIA and the IJ de novo, giving "substantial deference" to their "interpretation of the INA and accompanying regulations," and review their factual findings for substantial evidence. *Urbina-Mejia v. Holder*, 597 F.3d 360, 364 (6th Cir. 2010). "We cannot reverse such [factual] findings simply because we would have decided them differently." *Id.* Rather, these findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### B. Withholding of Removal

Gonzalez-Isaguirre contends that, in finding him to be not credible, the BIA and the IJ overlooked our decision in *Liti v. Gonzales*, 411 F.3d 631 (6th Cir. 2005). In that case, we overturned the IJ's adverse credibility determination because we determined that the generalized statements in Liti's asylum application did not contradict the more specific testimony that Liti

subsequently gave at his removal hearing.  *Id.* at 637–39.  The government contends, on the other hand, that these cases are factually distinguishable.  Unlike petitioner in *Liti*, for instance, Gonzalez-Isaguirre "went to the effort [of] add[ing] pages [to his application] that separately detail specific incidents that support his claim."  Resp't Br. at 21.  These pages make no reference, however, to any sort of persecution committed against Gonzalez-Isaguirre.  *See* (Addendum to I-589 Application at 1–2) (C.A.R. 326–27).

While true, we are not certain that this fact alone provides a clear answer to the question at hand—whether an IJ can make an adverse credibility determination based on a petitioner providing facts at his removal hearing that supplement (rather than contradict) the account given in his I-589 application.  In any event, we need not decide whether *Liti* applies to this case, because we think that the IJ and the BIA correctly determined that Gonzalez-Isaguirre would not qualify for withholding of removal under the INA even if he were deemed credible.

In order "[t]o prevail on a petition for withholding of removal under the INA, an alien must show that there is a 'clear probability,' that is, that 'it is more likely than not'" that he would be subject to persecution on the basis of his "race, religion, nationality, membership in a particular social group, or political opinion."  *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (citations omitted).  A petitioner can meet this burden by either providing evidence of past persecution (thereby creating a rebuttable presumption of future persecution) or by showing that he will more likely than not be subject to persecution if returned to his native country.  8 C.F.R. § 1208.16(b).  Gonzalez-Isaguirre has done neither.

With respect to past persecution, Gonzalez-Isaguirre has conceded that he was not physically harmed on the basis of his political beliefs. He did state that he had stones, knives, and bullets thrown (but not fired) at him, and that sometimes Sandinista members would throw stones at his house. But these actions are far more consistent with the sort of "isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty," *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (6th Cir. 1998), that we have held do not constitute persecution than the sort of "actions that [we have held] might cross the line from harassment to persecution," such as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005). The IJ and the BIA did not err in finding an absence of past persecution.

The IJ and the BIA also did not err on the issue of future persecution. Gonzalez-Isaguirre concedes that he is no longer a formal member of any political party in Nicaragua. Moreover, as the BIA observed, the PLC—the party with which Gonzalez-Isaguirre was most closely affiliated—currently holds several seats within the Nicaraguan government, and appears to be an established player in Nicaraguan politics. BIA Dec. at 3 (C.A.R. at 5). Finally, Gonzalez-Isaguirre's immediately family—his mother, father, and sister—continue to live in Ciudad Dario, Gonzalez-Isaguirre's hometown. None appear to have suffered persecution at the hands of the current government. Fabian, an uncle who was allegedly imprisoned in 1990 or 1991 for ten years for his political beliefs, has remained politically active since his release and—based on the

evidence provided—does not appear to have suffered persecution as a result of this activity. The BIA and the IJ decision denying Gonzalez-Isaguirre's request for withholding of removal was supported by substantial evidence.

## C. Convention Against Torture

Gonzalez-Isaguirre is likewise ineligible for CAT relief. To qualify for such relief, "an alien need not show that the harm [he or] she faces is based on one of the five grounds (race, religion, nationality, social group, political opinion) required under the INA, but rather must establish a 'particularized threat of torture.'" *Almuhtaseb*, 453 F.3d at 751; *see also id.* at 749 ("[T]o be eligible for . . . CAT [relief], the applicant bears the burden of establishing [that] it is more likely than not that he or she would be tortured if removed to the proposed country of removal.") (internal quotation marks omitted). The relevant administrative regulations define torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" and as "an extreme form of cruel and inhuman treatment" that "does not include lesser forms of cruel, inhuman or degrading treatment or punishment." 8 C.F.R. § 1208.18(a).

The weight of the evidence does not support an inference of future torture in this case. The record contains no evidence of past torture inflicted upon Gonzalez-Isaguirre. *See* 8 C.F.R. § 1208.16(c)(3) (listing past torture as a factor that should be considered in making likelihood-of-future-torture determinations). Nor does the record here contain any evidence "of gross, flagrant or mass violations of human rights" in Nicaragua or other evidence supporting an

inference of torture if Gonzalez-Isaguirre is returned to Nicaragua.  *See id.*  The BIA and the IJ's

decision denying CAT relief to Gonzalez-Isaguirre was supported by substantial evidence.

## III.  CONCLUSION

For the foregoing reasons, we **DENY** Gonzalez-Isaguirre's petition for review.